862 F.2d 1009
 29 Wage & Hour Cas. (BN 68, 57 USLW 2352,
110 Lab.Cas. P 35,134
 Irene TOWNSEND on behalf of herself and all other similarly
situated persons, Irene Townsend, Deborah Beck, Gayle P.
Cochran, Alberta M. Dubinion, Joseph Gates, Gretchen Gorski,
Toni Johnson, Gregg C. Lowery, Denise M. Maloy, Karen R.
O'Toole, Romina A. Scott, Della Watkins, and Anita Williams,
Appellants,
v.
The MERCY HOSPITAL OF PITTSBURGH.
 No. 88-3209.
 United States Court of Appeals,
Third Circuit.
 Argued Aug. 29, 1988.
Decided Nov. 29, 1988.
Rehearing and Rehearing In Banc
Denied Dec. 19, 1988.
 
 E.J. Strassburger (argued), Strassburger McKenna Gutnick & Potter, Pittsburgh, Pa., for appellants.
 John C. Unkovic (argued), C. Arthur Dimond, Reed, Smith, Shaw and McClay, Pittsburgh, Pa., for appellee.
 Before SLOVITER, GREENBERG and COWEN, Circuit Judges.
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The plaintiff/appellant, Irene Townsend, brought suit against The Mercy Hospital of Pittsburgh (Mercy) on her own behalf and on behalf of others similarly situated to recover unpaid overtime compensation pursuant to the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. Sec. 216(b) (1982). Townsend alleged that Mercy had violated the basic overtime provision of the Act, 29 U.S.C. Sec. 207(a)(1), by failing to pay its operating room technicians and nurses overtime at a rate one and one-half times their regular hourly wage.
 
 
 2
 After the completion of discovery, Townsend filed a motion for partial summary judgment on the issue of liability, and Mercy filed a cross motion for summary judgment. The district court, adopting the Magistrate's recommendation, concluded that Mercy had not violated the FLSA. It therefore granted Mercy's motion for summary judgment and denied Townsend's motion for partial summary judgment. 689 F.Supp. 503.
 
 
 3
 Townsend appeals. Our review of a grant of summary judgment is plenary.
 
 Factual Background
 
 4
 Townsend states that the "single, narrow issue" on this appeal poses a question of first impression involving what constitutes a "bona fide rate" under the statutory exception to the overtime provisions of the Fair Labor Standards Act. Appellants' Brief at 10. In order to address this legal issue, it is necessary to review the terms and conditions of Townsend's employment at Mercy.
 
 
 5
 Surgery at Mercy is normally scheduled between 7 a.m. and 5:30 p.m. Monday through Friday, and the operating rooms are covered during that period by two regular weekday shifts. In addition, the hospital set up overtime shifts known as "on-premises-on-call" shifts to provide guaranteed staffing for off-hours emergency surgery.
 
 
 6
 During the regular shifts, the operating room personnel perform tasks such as preparing and maintaining operating rooms and assisting in medical procedures, for which they are compensated at their regular rate. On the other hand, when they are assigned to the on-premises-on-call shifts, they are required to stay on hospital premises, but are not on active duty until called. The on-premises-on-call shifts are thus divided between waiting periods and active periods which vary according to the need for off-hours surgical procedures.
 
 
 7
 Townsend was hired with the understanding that her work week would consist of five regular eight hour shifts and one overtime shift. During her active periods on her overtime shift, Townsend performed the same tasks for which she was responsible during her regular shifts and was paid one and one-half times her regular shift rate for all work performed. During waiting periods on that shift, Townsend had no assigned duties and was free to eat, sleep, smoke, read, watch television or otherwise occupy herself, provided she remained on premises in readiness for active duty. She was paid one and one-half times the federal minimum wage for these waiting periods.[1] The basis for this lawsuit is Townsend's contention that utilization of the federal minimum wage rate as the base rate for overtime waiting periods violates the overtime pay provisions of the FLSA.
 
 The Legal Issue
 
 8
 The parties do not raise any factual issues on this appeal. Section 7(a)(1) of the FLSA requires that an employee who works more than forty hours a week shall receive compensation for the additional hours "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. Sec. 207(a)(1) (1982). Patently, the payment to appellants for the waiting periods during their on-premises-on-call shift was at a rate less than one and one-half times their regular rate.
 
 
 9
 Section 7(g)(2) of the FLSA, however, provides an exception to the requirements of section 7(a)(1) where the employee performs two or more different kinds of work and has agreed with the employer that different rates will apply to the different kinds of work. Under that section:
 
 
 10
 No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection, if pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection--
 
 
 11
 * * *
 
 
 12
 (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours.
 
 
 13
 29 U.S.C. Sec. 207(g)(2) (1982).
 
 
 14
 Townsend has conceded that the requisite agreement exists between Mercy and the operating room employees. Each employee was notified of and implicitly agreed to this arrangement as part of the terms and conditions of employment. Further, Townsend concedes "that working and waiting time, from a strictly academic perspective, constitute two different kinds of work." Appellants' Brief at 11. She argues, however, that because the minimum wage paid for waiting time was only applied during the overtime shift, it was not a "bona fide rate applicable to the same work when performed during nonovertime hours" within the statutory exception of section 7(g)(2).
 
 
 15
 The essence of Townsend's argument is that because there was some waiting time which occurred routinely during regular shifts for which the hospital personnel were compensated at their regular rate, Mercy cannot, consistent with the statute, establish the minimum wage rate as the base rate for waiting time during the on-premises-on-call shift.
 
 
 16
 In the report accepted by the district court, the magistrate concluded that the duties performed during the "non-productive" periods on the on-call shift are substantially different from the duties performed by the operating room personnel during the regular shifts. The record shows that appellants produced no evidence to create a genuine issue of material fact on this point. There was unrebutted testimony that during the regular shift the employees "are assigned duties and they are usually kept busy the forty hours" and that it's "a rare occurrence" for personnel to be drinking coffee and chatting during regular shifts. App. at 73. There was also testimony that "[t]here is always something to do in the OR" and that any time to chat or drink coffee is minimal. App. at 106. Even appellants' brief concedes that unoccupied time is "pronouncedly greater" and "undoubtedly higher" during the on-premises-on-call shifts. Appellants' Brief at 6, 12.
 
 
 17
 The fact that appellants were not free to sleep or watch television during their regular shifts underscores the qualitative difference between the idle time, which is inherent in any job, and the separately compensable waiting time which occurred during the on-call shifts. It is of no consequence that some idle time occurred during regular shift hours since that time was de minimus and was simply a function of the reality that nobody works every minute of every day. We conclude that the rare opportunity for an operating nurse or technician to have a cup of coffee during the day does not render that brief period a "kind of work" that is equivalent to the waiting time during the on-premises-on-call shift within the meaning of section 7(g)(2) of the FLSA.
 
 
 18
 We turn then to the legal issue whether a rate that applies solely to a type of work performed only during overtime hours can be a "bona fide" rate for purposes of the FLSA. There is no appellate decision expressly on point. A comparable situation arose in Hodgson v. Penn Packing Co., 335 F.Supp. 1015, 1022-23 (E.D.Pa.1971), where a bookkeeper, some butchers, and some maintenance men performed cleanup and gardening chores at their employer's plant on weekends for which they were paid at a base rate less than their regular weekly rate. The court concluded that this rate could be a "bona fide rate" within the terms of section 7(g)(2) even though it was not applicable to any work done during nonovertime hours. The court reasoned that this arrangement did not violate the spirit of the statute's requirement "that an employer cannot pay one rate during straight time hours and a lower rate for the same work during overtime hours." Id. at 1023.
 
 
 19
 This reading of the statute has been adopted by the Wage-Hour Administrator in charge of applying the FLSA on a daily basis. In an opinion letter addressing a situation involving on-call compensation for a laboratory technician in a hospital, the Wage-Hour Administrator stated that:
 
 
 20
 It is our opinion that the standby or on-call time may be compensated at any rate which is not less than the applicable minimum wage, but the actual productive laboratory work must be paid for at the same rate applicable to the normal day shift.
 
 
 21
 Opinion Letter No. 1125 (WH-78), [2 Wages-Hours] Lab.L.Rep. (CCH) p 30, 691 (Sept. 15, 1970). In this case, Mercy has done precisely that, using the regular daytime rate as the base for the productive time during the on-call shifts.
 
 
 22
 Although we are not bound by opinions of the Wage-Hour Administrator, the Administrator's expertise acquired through day-to-day application of the statute makes us hesitant to contravene such opinions unless the statute plainly requires otherwise. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944). Here, the statutory language is clearly susceptible to the interpretation given it in Opinion Letter 1125 and in Hodgson v. Penn Packing. We agree that section 7(g)(2) permits an employer and an employee to agree to a "bona fide rate" for work which is performed only during overtime hours.
 
 
 23
 Finally, Townsend argues that an administrative regulation promulgated by the Wage and Hour Division of the Department of Labor interpreting section 7(g)(2) establishes that a rate which is only applicable to work performed during overtime hours cannot be bona fide. The regulation provides that, "[a]n hourly rate will be regarded as bona fide for a particular kind of work [if] it is equal to or greater than the applicable minimum rate therefor and if it is the rate actually paid for such work when performed during nonovertime hours." 29 C.F.R. Sec. 778.419(b) (1987).
 
 
 24
 This regulation cannot bear the weight which Townsend places on it. The regulation provides a safe harbor for rates on work which is performed during both overtime and nonovertime hours. The regulation does not, however, establish its obverse: that a rate cannot be bona fide unless it is established for work performed during nonovertime hours. In a situation such as this, where the rate in question applies only to work performed during overtime hours, the regulation is silent. Significantly, this regulation was in effect when the Wage-Hour Administrator ruled that overtime payments under an arrangement similar to that agreed to here did not violate the statute.
 
 Conclusion
 
 25
 For the reasons set forth above, we will affirm the district court's judgment granting Mercy's motion for summary judgment.
 
 
 26
 COWEN, Circuit Judge, dissenting.
 
 
 27
 I dissent from the majority's opinion, which sanctions a practice that clearly conflicts with both the plain language of the applicable statute and regulation, and the policy objectives of the Fair Labor Standards Act of 1938, 52 Stat. 1060 (1938) (codified as amended at 29 U.S.C. Secs. 201-19 (1982) (the "FLSA").
 
 
 28
 Section 7(a)(1) of the FLSA requires that any employer who requires his workers to work more than forty hours a week pay each worker for his overtime work "at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. Sec. 207(a)(1). The clear policy behind this provision of the FLSA is to require employers to compensate employees who work overtime at a premium rate, which is at least one and one-half times the rate normally paid for this type of work. The provision is intended to ensure that this minimum overtime wage standard be satisfied, whatever the relative bargaining power of the employer and employee.
 
 
 29
 The provision does allow for certain exceptions, one of which is at issue in this case. Section 207(g)(2) of the FLSA provides that
 
 
 30
 (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, [subsection (a) will not be violated if the overtime rate] is computed at rates not less than one and one-half such bona fide rates applicable to the same work when performed during nonovertime hours.
 
 
 31
 29 U.S.C. Sec. 207(g)(2) (1982) (emphasis added).
 
 
 32
 The Wage and Hour Administrator of the Department of Labor has promulgated a regulation which further defines this exception. That regulation states:
 
 
 33
 (a) Under section 7(g)(2) an employee who performs two or more different kinds of work, for which different straight time hourly rates are established, may agree with his employer in advance of the performance of the work that he will be paid during overtime hours at a rate not less than one and one-half times the hourly non-overtime rate established for the type of work he is performing during such overtime hours. No additional overtime pay will be due under the act provided that the general requirements set forth in Sec. 778.417 are met and;
 
 
 34
 (1) The hourly rate upon which the overtime rate is based in a bona fide rate ;
 
 
 35
 ....
 
 
 36
 (b) An hourly rate will be regarded as a bona fide rate for a particular kind of work [if] it is equal to or greater than the applicable minimum rate therefor and if it is the rate actually paid for such work when performed during nonovertime hours.
 
 
 37
 29 C.F.R. Sec. 778.419 (1987) (emphasis added).
 
 
 38
 The clear and unmistakable import of the language of the statute and regulation is that if an employee performs two or more types of work, an employer will be permitted to pay the employee for overtime work at a rate which is one and one-half the rate the employer normally pays for that type of work. Employers, however, are kept honest by the requirement that the base rate be a "bona fide rate," which is defined by the regulation to be a rate "actually paid for such work when performed during nonovertime hours." 29 C.F.R. Sec. 778.419(b) (1987).
 
 
 39
 It is settled doctrine that the FLSA is "remedial and humanitarian in purpose," and should "not be interpreted or applied in a narrow, grudging manner." Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597, 64 S.Ct. 698, 703, 88 L.Ed. 949 (1944). Consistent with this mandate, an employer seeking the benefit of an exception under the Act should have to meet all of the requirements of the exception. Since the Mercy Hospital of Pittsburgh admits that the rate for "on call" work is never paid during nonovertime hours, the rate is not a "bona fide" rate under the clear language of the statute and regulation, and Mercy is not entitled to the benefit of the statutory exception.[1]
 
 
 40
 Even beyond the clear language of the regulation, however, there are sound policy reasons to prefer this interpretation of the statute. As I noted above, the FLSA is intended to ensure that certain minimum overtime wage standards be met, whatever the relative bargaining power of the employer and employee. The requirement that a rate be "actually paid" in order to be considered "bona fide" is clearly in line with that policy. The majority's result would permit an employer to arbitrarily set a base rate for a particular type of work--as Mercy has set the minimum wage for "on call" work--and thus avoid paying a true time and one-half for the overtime work. Requiring that a rate, to be bona fide, be actually paid during the normal workweek increases the likelihood that the overtime rate will be a premium rate at least one and one-half times the normal rate for that type of work, as contemplated by the FLSA.
 
 
 41
 Because I prefer not to torture the language of a statute and regulation to reach a result that conflicts with the policy underlying the statute, I dissent from the majority's opinion. I would reverse the order of the district court and remand for entry of an order in favor of the plaintiffs on the issue of liability.
 
 
 
 [1]
 All appellants earned a regular shift rate of between approximately $8.00 and $12.00 per hour. Appellants' Brief at 5 & n. 2. At all points relevant to this litigation, the federal minimum wage was $3.35 per hour
 
 
 [1]
 Rather than applying the clear language of the statute and regulation, the majority relies upon a district court opinion, Hodgson v. Penn Packing Co., 335 F.Supp. 1015 (E.D.Pa.1971), and an Opinion Letter of the Wage-Hour Administrator, Opinion Letter No. 1125 (WH-78), [2 Wages-Hours] Lab.L.Rep. (CCH) p 30, 691 (Sept. 15, 1970). Neither analyzes the issue with reference to the applicable regulation, which is binding and has the force of law. See Chrysler Corp v. Brown, 441 U.S. 281, 304, 99 S.Ct. 1705, 1719, 60 L.Ed.2d 208 (1979) (substantive administrative regulation promulgated pursuant to delegated legislative authority has "force and effect of law")
 Additionally, even under the majority's theory a rate should be considered "bona fide" only if it is the rate which would have been paid if this type of work were performed during nonovertime hours. Since Mercy has presented no evidence which demonstrates that it would (or could) employ nurses for nonovertime "on call" duty at a rate of $3.35 an hour, the rate should not, given the record in this case, be considered "bona fide" even under the majority's rationale.