**Lee MATHIAS, on behalf of himself and all other Plaintiffs similarly situated, known and unknown, Plaintiffs,**

v.

**ADDISON FIRE PROTECTION DISTRICT NO. 1, Defendant.**

**No. 96 C 6675.**

United States District Court, N.D. Illinois, Eastern Division.

March 29, 1999.

Thomas F. Howard, Oak Park, IL, Daniel A. Macahon, Park Ridge, IL, for Plaintiffs.

Edward W. Bergmann, Noah A. Finkel, Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

NOLAN, United States Magistrate Judge.[1]

### I. INTRODUCTION

Plaintiffs allege that their current or former employer, Defendant Addison Fire Protection District No. 1, violated the Fair

---

1. Mary L. Kelly, a second-year student at Chicago Kent College of Law, assisted in the research and preparation of this decision.

Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the Illinois Wage Payment and Collection Act, 820 ILCS § 115/1 et seq., by failing to pay them overtime at a rate one and one-half times their regular firefighter rate of pay for their work as fire inspectors. The parties have filed cross-motions for summary judgment. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment (# 18) is DENIED and Defendant's Motion for Summary Judgment (# 20) is GRANTED.

## II. FACTUAL BACKGROUND [2]

### A. The Parties

Plaintiffs Lee Mathias and Michael McDonald are present or past hourly employees of Defendant Addison Fire Protection District No.1 ("Fire Protection District"). Defendant's 12(M) Statement ¶ 3. Plaintiffs have worked as firefighters and fire inspectors for the Fire Protection District. *Id.* The Fire Protection District provides fire protection and prevention to the area within its district boundaries. *Id.* ¶ 4. The Fire Protection District's principal place of business is in Addison, Illinois. *Id.*

### B. Duties of Firefighters

The Fire Protection District employs fourteen firefighters on three shifts. Defendant's 12(M) Statement ¶ 5. Firefighters employed by the Fire Protection District work firefighting shifts consisting of 24 hours on duty followed 48 hours off duty. *Id.* The Fire Protection District's Rules and Regulations dated June 1, 1995 ("Rules and Regulations") provide the following job description for the firefighter position:

- Skilled emergency firefighting and emergency medical services;
- Responsibility for participating in the provision of emergency medical services;
- Performance of rescue and fire suppression and prevention;
- Operation of fire and emergency medical services equipment;
- Maintenance of equipment, apparatus and quarters;
- Performance of hazardous tasks and medical procedures under emergency conditions which involve strenuous exertions under such adverse conditions as fire, heat, smoke, darkness, and cramped surroundings;
- Training and studying methods, techniques, and procedures.

Defendant's 12(M) Statement ¶ 6, Exhibit E. The Rules and Regulations divide firefighter functions and responsibilities into six categories: 1) station and apparatus maintenance; 2) fire suppression; 3) organizational support; 4) risk care management; 5) fire prevention education; and 6) technical. Defendant's 12(M) Statement ¶ 6. Firefighters must obtain a Firefighter

---

**2.** The following facts are taken from the parties' Local Rule 12(M) and 12(N) Statements and accompanying exhibits and are undisputed unless indicated otherwise. Because Plaintiffs failed to file a response to the Fire Protection District's Local Rule 12(M) statement or 12(N)(3)(b) statement, the facts in the Fire Protection District's Rule 12(M) statement and 12(N)(3)(b) statement are deemed admitted by the Plaintiffs where the allegations in those statements are properly supported by references to the record or other evidentiary material. *See* Local Rule 12(M) ("All material facts set forth in the statement filed pursuant to section N(3)(b) will be deemed admitted unless controverted by the statement of the moving."); Local Rule 12(N)(3)(b) (stating "All material facts set forth in the statement required of the moving

party will be deemed admitted unless controverted by the statement of the opposing party."); *Federal Trade Commission v. Febre,* 128 F.3d 530, 536 (7th Cir.1997) (collecting cases where the Seventh Circuit has upheld strict compliance with Local Rule 12). The fact that Plaintiffs filed their own 12(M) statement in support of their summary judgment motion is insufficient to challenge the facts set forth in the Fire Protection District's statements. *International Union of Operating Engineers, Local 150 v. Sinnett Excavating, Inc.,* 1995 WL 23040, *2 fn. 3 (N.D.Ill. Jan. 19, 1995) (stating "Simply filing a 12(m) in support of a cross motion for summary judgment is insufficient to challenge the facts asserted in an opponent's 12(m) statement because it forces a court to speculate whether facts asserted by each party are in direct conflict.").

II Certificate within one year of employment and successfully complete the requirements to obtain Hazardous Materials I Certification. Defendant's 12(M) Statement, Exhibit E.

### C. Duties of Fire Inspectors

The Fire Protection District has also created a fire inspector position. Defendant's 12(M) Statement ¶ 7. Five of the Fire Protection District's firefighters work as fire inspectors. *Id.* Like all firefighters employed by the Fire Protection District, these five firefighters work a 24 hour shift and then are off for 48 hours. *Id.* These five firefighters also work two or three eight-hour shifts a week as fire inspectors. *Id.*

The Fire Protection District's Rules and Regulations describe the nature of the fire inspector job as follows:

● Supervising and participating in the actual field enforcement of all State and local laws and ordinances as they relate to fire prevention;

● Correcting fire hazards with special emphasis on inspecting public assembly areas and areas where special hazards exist;

● Attending various community organization meetings in which the Department is involved and representing the Department to the Village agencies as assigned by the Fire Chief;

● Reviewing all new building plans to assure compliance with the most recent fire codes, laws, and ordinances and approving or denying such plans after such review.

Defendant's 12(M) Statement ¶ 8. The Rules and Regulations give the following examples of fire inspector work:

1) Assist the Fire Chief in establishing, planning and implementing the Department's fire prevention program;

2) Inspect places of public assembly such as halls, auditoriums, theaters, business and industrial establishments for existing or potential fire hazards and order correction of all dangerous conditions;

3) Receive complaints of fire hazards, thoroughly investigate complaint conditions and recommend or order acceptable correction methods;

4) Inspect schools for fire hazards and conduct fire drills. When assigned, the Fire Inspector shall give talks to students on fire hazards and drill measures;

5) Cooperate fully with inspectors or field service personnel from other departments in making inspections for the correction of removal of hazards involving structural, electrical, or utility service safety;

6) Cooperate and assist the fire companies in fire prevention and inspection activities; and

7) Prepare reports of all inspections that have been undertaken and maintain a file of all reports and records.

*Id.* All fire inspectors must have thorough knowledge of fire hazards, fire safety laws, and modern methods and techniques of fire prevention; knowledge of the principles and practices of building construction and maintenance; ability to recognize existing or potential fire and casualty hazards in a wide variety of structures and installations; ability to establish and maintain working relationships with property owners, the general public, and other Department employees; ability to express factual information clearly and concisely in either written form or oral form; and the ability to enforce rules and regulations in a firm, consistent, tactful, and impartial manner. *Id.* An individual must be a Certified Firefighter III with the State of Illinois to be considered for a Fire Inspector position. *Id.*

Each business day, the Fire Protection District assigns to the truck company one of its two fire inspectors who are on duty that day. Defendant's 12(N)(3)(b) Statement ¶ 1. The fire inspector assigned to the truck company must respond to any fire alarm on which the truck company responds if that fire inspector is at the

station performing fire inspector duties (as opposed to out of the station on an inspection) and the truck company is in the station. *Id.* The Fire Protection District has one fire inspector ride with the truck company and respond to fire calls for "extra manpower" or "backup." Plaintiffs' 12(M) Statement ¶ 12; Defendant's 12(N)(3)(a) Statement ¶ 12. Fire Inspectors must also respond as firefighters to "Plan 2," or "working," fires. Defendant's 12(M) Statement ¶ 8. Each fire inspector responded to fewer than twenty fire alarms in 1997. Defendant's 12(N)(3)(b) Statement ¶ 2; Declaration of Leigh Fabbri ¶ 3.

### D. Pay Rates for Fire Inspectors

In 1985, the United States Supreme Court held that public employers were not immune from the minimum wage and overtime requirements of the FLSA.[3] Thus, at that time, the Fire Protection District's Fire Deputy Chief, Timothy F. Deutschle, sought the advice and counsel of Edward Bergmann concerning the Fire Protection District's compliance with the FLSA. Defendant's 12(M) Statement ¶ 9. Bergmann is an attorney at the law firm of Seyfarth, Shaw, Fairweather & Geraldson in Chicago, Illinois and an expert in wage-and-hour issues. *Id.*

Deutschle and Bergmann discussed whether the Fire Protection District must pay employees who work in ancillary positions, such as firefighters who also work as fire inspectors, the same regular rate for fire inspector shifts as for firefighter shifts. Defendant's 12(M) Statement ¶ 9. Bergmann advised Deutschle that 29 U.S.C. § 207(a) and (k) require the Fire Protection District to pay all employees engaged in fire protection activities time-and-one-half for all work performed in excess of 212 hours in a 28–day period. *Id.* Bergmann further advised Deutschle that, pursuant to 29 U.S.C. § 207(g)(2), the Fire

Protection District may establish a different hourly rate for a firefighter working shifts as a fire inspector, so long as the Fire Protection District pays that employee time-and-a-half that different rate when those hours worked as a fire inspector are in excess of 212 hours (as a firefighter and fire inspector) in a 28–day period. *Id.*

Upon the advice of Bergmann, Deutschle directed the coordinator of the Fire Prevention Bureau to conduct a survey of the rates paid for fire inspector work by eight or nine fire departments in suburban Chicago similar in size to the Fire Protection District. Defendant's 12(M) Statement ¶ 10. Based on a rough average of the rates received in the survey, Deutschle set a regular rate of $9.00 per hour and $13.50 per hour for overtime for all ancillary jobs, including fire inspector. *Id.* Between October 11, 1993 and October 5, 1997, the Fire Protection District paid Plaintiffs a regular hourly rate between $9.50 and $10.00 per hour for their work as fire inspectors. *Id.* ¶ 12. Plaintiffs' fire inspector hourly rate is less than their hourly wage as firefighters. Plaintiffs' 12(M) Statement ¶ 13; Defendant's 12(N)(3)(a) Statement ¶ 13.

When the hours that an employee works in excess of 212 in a 28–day period are on fire inspector shifts, the Fire Protection District pays that employee time-and-a-half of that employee's regular fire inspector rate. Defendant's 12(M) Statement ¶ 14. All of the hours Plaintiffs have worked as fire inspectors have been hours in excess of 212 in a 28–day period. *Id.* If a fire inspector rides on the company truck to a fire alarm and does not stay at the scene to fight a fire, the fire inspector is paid at his or her inspector rate. Defendant's 12(M) Statement ¶ 15. If an employee is working as a fire inspector and responds to a Plan 2 working fire or works at the scene of a fire for a length of time on a Plan 1 fire, the Fire Protection Dis-

---

**3.** *Garcia v. San Antonio Metro Transit. Autho.,* 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

trict pays him time-and-a-half of his regular firefighter rate. *Id.*

### E. Pay Rates for Firefighters

From October 11, 1993 through October 5, 1997, the Fire Protection District paid Plaintiffs a regular hourly rate between $14.86 and $17.13 per hour for firefighting work. Defendant's 12(M) Statement ¶ 11. When an employee works in excess of 212 hours in a 28–day period on firefighting shifts, the Fire Protection District pays that employee time-and-a-half of his regular firefighting rate. *Id.* ¶ 13. Plaintiffs have always understood that they would be paid a different rate for working as fire inspectors than as firefighters. *Id.* ¶ 16.

### III. ANALYSIS

Federal Rule of Civil Procedure 56 mandates the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). A genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### A. Fair Labor Standards Act Claim

The Firefighters argue that they should be paid overtime at a rate one and one-half times their regular hourly firefighter wage for their work as fire inspectors. Under the FLSA, employees engaged in fire protection activities must be paid one and one-half times their regular rate of pay for all hours worked over 212 in a 28–day period.

4. Congress set the number of hours in a 28 day period at 216 but allowed the Department of Labor to determine the average number of hours worked in a 28 day period. 29 U.S.C.

29 U.S.C. § 207(a) and (k).[4] Section 7(g)(2) provides a partial exemption from the overtime provisions of Section 7(k). Section 7(g)(2) permits an employer to pay an employee overtime compensation at one and one half times a different hourly rate than the employee's regular hourly rate when the employee performs two or more different kinds of work and has reached an agreement or understanding with the employer that different rates apply to different kinds of work. Section 7(g)(2) provides in relevant part as follows:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee for the number hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection -
>
> \*     \*     \*     \*     \*     \*
>
> (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours.

29 U.S.C. § 207(g)(2). Thus, an employer must satisfy following requirements to qualify for Section 7(g)(2)'s exemption:

> (1) the employee must perform two or more kinds of work;
>
> (2) the employer must establish a bona fide hourly rate for those different kinds of work;
>
> (3) the compensation must be paid pursuant to an agreement or understanding arrived at between the employer and the

§ 207(k). The Department of Labor lowered the hours per 28 day period to 212. 29 C.F.R. § 553.230.

employee in advance of the performance of the work; and

(4) the compensation must be computed at rates not less than one and one-half times such rates applicable to the same work when performed during nonovertime hours.

29 U.S.C. § 207(g)(2); 29 C.F.R. § 778.419; *Corning Glass Works v. Brennan*, 417 U.S. 188, 196–97, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974)(holding employer bears burden of establishing the applicability of an FLSA exemption).[5] The Fire Protection District meets each of the four requirements potentially at issue in this case.

### 1. Two or More Kinds of Work

The FLSA and the applicable regulations fail to define the term "two or more kinds of work," but two reported decisions have considered this requirement of Section 7(g)(2). *See Townsend v. The Mercy Hospital*, 862 F.2d 1009 (3d Cir.1988); *Hodgson v. Penn Packing Co.*, 335 F.Supp. 1015, 1022 (E.D.Pa.1971). In *Townsend*, the defendant hospital normally scheduled surgery between 7 a.m. and 5:30 p.m. The hospital also set up overtime shifts or "on-premises-on-call" shifts to provide staffing for off-hours emergencies. The "on-premises-on-call" shifts were divided between waiting periods and active periods depending on the need for off-hours surgical procedures. During "on-premises-on-call" active periods, operating room personnel performed the same duties they were responsible for during their regular shifts and were paid one and one-half times their regular rates of pay. During "on-premises-on-call" waiting periods, operating room personnel had no assigned duties and thus,

could eat, sleep, read, watch television, etc. as long as they remained on the premises. Operating room personnel were paid one and one-half times the federal minimum wage for "on-premises-on-call" waiting periods.

The *Townsend* operating room personnel argued that the hospital violated the FLSA by failing to pay them one and one-half time their regular hourly wage for their overtime waiting periods. The operating room personnel further argued that the hospital failed to meet the "two or more kinds of work" requirement because "there was some waiting time which occurred routinely during regular shifts for which hospital personnel were compensated at their regular rate ...." *Id.* at 1012. The Third Circuit rejected the operating room personnel's argument:

> The fact that appellants were not free to sleep or watch television during their regular shifts underscores the qualitative difference between the idle time, which is inherent in any job, and the separately compensable waiting time which occurred during the on-call shifts. It is of no consequence that some idle time occurred during regular shift hours since that time was de minimums and was simply a function of the reality that nobody works every minute of every day. We conclude that the rare opportunity for an operating nurse or technician to have a cup of coffee during the day does not render that brief period a "kind of work" that is equivalent to the waiting time during the on-premises-on-call shift within the meaning of section 7(g)(2) of the FLSA.

*Id.*[6] Similarly, in *Penn Packing Co.*, the district court held that employees whose

---

5. To qualify under Section 7(g)(2), the following two additional requirements must be met: 1) the overtime hours for which the overtime rate is paid qualify as overtime hours under section 7(e)(5), (6), or (7) and 2) the number of overtime hours for which the overtime rate is paid equals or exceeds the number of hours worked in excess of the applicable maximum hours standard. 29 C.F.R. § 778.419. Plain-

tiffs do not contend that the Fire Protection District has not meet these two requirements.

6. Plaintiffs claim that *Townsend* is distinguishable because the operating room personnel were free to read, sleep, and watch television while on call which were activities they could not do on their regular shifts. In this case, Plaintiffs claim they can perform their fire inspection duties while on their firefighter

**922**

regular jobs included bookkeeper, butcher, and maintenance men performed two or more kinds of work within the meaning of Section 7(g)(2) when they cut grass and picked up paper at their employer's plant on weekends. *Penn Packing Co.,* 335 F.Supp. at 1021–22.

In this case, Plaintiffs contend that a substantial amount of overlap exists between firefighter duties and fire inspector duties and thus, they are not performing "two or more kinds of work." Plaintiffs rely on the following facts: (1) firefighters and the Fire Prevention Bureau are jointly responsible for preplanned surveys; (2) firefighters perform housekeeping inspections and fire inspectors supervise them on such inspections; (3) fire inspectors must respond to "Plan 2" or "working" fires; (4) one fire inspector is assigned each day to ride on the company fire truck as a "back-up;" (5) fire inspectors can issue citations to business owners for noncompliance with village codes; (6) firefighters and fire inspectors are responsible for public education; (7) the Fire Chief stated that ancillary duties could be done on firefighter time or ancillary time. Plaintiff's Memo., p. 9; Plaintiff's Resp., p. 2.[7]

The overlap between the duties of a firefighter and a fire inspector is insubstantial and does not defeat the conclusion that firefighting and fire inspection are two different kinds of work for purposes of Section 7(g)(2). First, fire inspectors merely assist firefighters in conducting preplanned surveys of buildings. Defendant's 12(N)(a)(3) Statement ¶ 15. Second, while fire inspectors and firefighters perform inspections, the type of inspectors differ considerably. Fire inspectors conduct inspections of all public assembly areas, schools, and business establishments for fire hazards, order correction of all dangerous conditions, receive and investigate complaints of fire hazards, prepare reports of all inspections, and maintain a file of all records and reports. Defendant's 12(M) Statement ¶ 8. Firefighters, on the other hand, conduct housekeeping inspections which are supervised by fire inspectors. Defendant's 12(N)(3)(a) Statement ¶ 16. Housekeeping inspections involve inspecting for neatness, orderliness, and the proper functioning of emergency lights and do not involve the same level of fire prevention code violations as do inspections by fire inspectors and do not require the same level of training. Defendant's 12(M) ¶ 6, fn.1.

Moreover, while fire inspectors have some responsibility for responding to fire alarms and fighting fires, that situation occurs infrequently. During 1997, each fire inspectors responded to fewer than twenty fire alarms. Defendant's Rule 12(N)(3)(b) Statement ¶ 2; Fabbri Declaration ¶ 3. Each fire alarm that is not a working fire and where the fire inspector is paid a fire inspector rate requires approximately fifteen minutes of response time. Defendant's 12(N)(3)(b) Statement ¶ 1. Thus, each fire inspector spends about 300 minutes or 5 hours each year riding with the truck company and being paid at a fire inspector rate. Each fire inspector works two or three eight-hour shifts per

shifts or during overtime. The Court acknowledges this factual distinction, but Plaintiffs fail to explain why their occasional performance of certain fire inspector duties while on their firefighter shifts, such as completion of paperwork, affects the applicability of Section 7(g)(2).

7. The fact that fire inspectors can issue citations to business owners for violations of village codes does not demonstrate a overlap in fire inspector and firefighting duties. The Court also finds Plaintiffs' claim that firefighters and fire inspectors are responsible for public education unpersuasive because Plaintiffs do not explain or cite to any explanation in the record concerning whether firefighters and fire inspectors are responsible for public education on the same subjects and if so, what percentage of their jobs consist of public education responsibilities. Finally, the fact that employees performing ancillary positions may on some occasions perform certain fire inspector duties during their regular firefighting shifts does not show a genuine overlap in duties between the firefighter and fire inspector positions.

week or an average of 1040 hours per year. Defendant's 12(M) ¶ 7; Fabbri Dep. pp. 30–31. In sum, fire inspectors spend less than one-half of one percent of their time per year riding with the truck company while being paid at a fire inspector rate. This minimal overlap in duties between firefighters and fire inspectors does not render Section 7(g)(2) inapplicable.[8]

Plaintiffs suggest that the Fire Protection District improperly uses the fire inspector position "as constant backup that is always available but paid at a lower rate." Plaintiff's Reply, p. 2. The Court disagrees. The fact that fire inspectors are required to respond to Plan 2 working fires and one fire inspector per day rides the company truck to fire alarms as "backup" is similar to the "on-premises-on-call" waiting periods and lower rate of pay found permissible in *Townsend*. In *Townsend*, the operating room personnel were

paid one and one-half times their regular rate of pay during active periods on their overtime "on-premises-on-call" shifts. Likewise, fire inspectors are paid one and one-half times their regular firefighter rates when they respond to a Plan 2 fire or if they work at the scene of a Plan 1 fire for any length of time. Defendant's 12(M) Statement ¶ 15.[9]

## 2. Establishment of a Bona Fide Hourly Rate for Different Kinds of Work

Plaintiffs contend that the District has failed to establish a bona fide hourly rate for fire inspection services because fire inspection duties are performed only during overtime hours. The FLSA provides that the overtime rate must be computed at one and one-half times the rate "applicable to the same work when performed during nonovertime hours." 29 U.S.C.

8. Plaintiffs also argue that the Court must consider the overlap between firefighter duties and the duties of ancillary positions other than the fire inspector position. The Court rejects Plaintiffs' argument because they fail to cite any supporting authority and have not explained why the Court should consider positions which Plaintiffs have never held and are not at issue in this case. *See Tyler v. Runyon*, 70 F.3d 458, 466 (7th Cir. 1995) (applying Federal Rule of Appellate Procedure 28 and stating that "[the] court has no duty to research and construct legal arguments available to a party."); *Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir.1995) (stating that "a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.").

9. Plaintiffs further argue that the Fire Protection District acts arbitrarily and capriciously when it pays fire inspectors at a lower rate than firefighters because certain other positions, such as paramedic, hazardous materials team, dive rescue team, radio repair, and mechanic receive one and one-half times the firefighter rate for overtime work. Plaintiffs' Resp. p. 2. According to Plaintiffs, "the FLSA does not have a specific requirement that the Defendant be consistent, [but] the fact that some positions are paid at full firefighter rate without any distinction or reason for the disparate treatment, shows that the Defendant does not have a sound rationale for paying

the ancillary positions a different rate, other than the fact that it wants to save money." Plaintiff's Reply, p. 3. Plaintiffs similarly argue that: (1) the Fire Protection District's distinction between emergency and non-emergency positions does not hold up under scrutiny; (2) each of the positions employed by the Fire Protection District requires special training and abilities beyond that of a regular firefighter; (3) each of the ancillary and non-ancillary positions are a necessary function of the Fire Protection District; and (4) each of the ancillary and non-ancillary job functions are regular recurring duties that can be performed both on shift and off shift.

Plaintiffs again fail to cite any authority in support of their arguments. Plaintiffs have also failed to show that ancillary positions other than the fire inspector position are not entitled to one and one-half times the regular firefighter rate for overtime work. Moreover, even if Plaintiffs made such a showing, it would be irrelevant to a determination of whether the Fire Protection District properly pays fire inspectors a lower rate than firefighters. Most importantly, this is not an equal protection case. Thus, the Fire Protection District need not articulate a rational basis for distinguishing between fire inspectors and other non-firefighter positions. Finally, Plaintiffs have not pointed the Court to any statute, regulation, or case law indicating that it is unlawful for the Fire Protection District to want to save money.

§ 207(g)(2); *see also* 29 C.F.R. § 778.415. The Seventh Circuit has not addressed the present issue where the rate in question applies only to work performed during overtime hours. However, a similar situation arose in *Townsend,* 862 F.2d at 1012 and *Penn Packing Co.,* 335 F.Supp. at 1022–23.

In *Townsend,* the technicians and nurses argued that the overtime rate which was paid to them for "on-premises-on-call" waiting periods and was lower than the rate paid to them during regular, non-overtime hours was not a "bona fide" rate for purposes of the FLSA because the "on-premises-on-call" shift work was done exclusively during overtime hours. *Townsend,* 862 F.2d. at 1012. The Third Circuit held that a bona fide hourly rate can exist within the terms of Section 7(g)(2) even if those jobs are performed only during overtime hours. *Id.*[10]

Similarly, in *Penn Packing Co.,* the district court rejected the Secretary of Labor's argument that no bona fide rate existed for the weekend clean-up work performed by the plaintiffs because the work was never performed during non-overtime hours. *Penn Packing Co.,* 335 F.Supp. at 1022–1023. The *Penn Packing Co.* court reasoned:

> [The bona fide rate] requirement merely provides that an employer who pays a certain straight time rate for a particular job must, if the job is performed during overtime hours, pay not less than one and one-half time the straight time rate. Penn Packing has not failed to satisfy this requirement; the requirement simply cannot be reconciled with

the facts of this case. In such a situation we believe that an employer satisfies the provisions of 29 U.S.C. § 207(g)(2) when he meets all requirements other than the one in question, agrees with his employees to pay an hourly rate in excess of the applicable minimum wage and scrupulously adheres to the requirement that he pay one and one-half times that rate during the overtime hours. In so holding, we in no way depart from the settled doctrine that to qualify for an exemption under the Act, an employer must meet all of the requirements of the exemption. We merely hold that, because under the unusual circumstances of this case the employer is unable to either to literally comply or fail[s] to comply with the requirement in question, he may qualify for the exemption if he satisfies all other requirements of 29 U.S.C. § 207(g)(2) and does not violate the spirit of this particular requirement, i.e. that an employer cannot pay one rate during straight time hours and a lower rate for the same work during overtime hours.

*Id.* at 1023.

This Court agrees with the reasoning of *Townsend* and *Penn Packing.* Moreover, the applicability of Section 7(g)(2) to this case is even stronger than in *Townsend* and *Penn Packing Co.* given the method utilized by the Fire Protection District to establish a regular hourly rate for fire inspection services. The Fire Protection District arrived at a base rate of pay for fire inspection services by averaging the rates of fire inspector pay it received in response to a survey conducted by the

**10.** The dissent in *Townsend* believed that the rate for "on call" work was not bona fide because "on call" work only occurred during overtime hours. The dissent noted, among other things, that the hospital had failed to present any evidence that it could employ nurses for non-overtime "on call" duty at a rate of $3.35 an hour. *Townsend,* 862 F.2d at 1014, fn. 1. The dissent also criticized the majority's opinion for allowing employers to "arbitrarily" set a base rate for a particular type of work and avoid paying a true time and

one-half for the overtime work. *Id.* at 1014. In this case, the Fire Protection District has implicitly shown that it can employ inspectors at its regular fire inspector rate of pay and that its establishment of the fire inspector regular rate of pay was not arbitrary because its regular fire inspector rate was based on a rough average of fire inspector rates paid by eight or nine fire departments in suburban Chicago similar in size to the Fire Protection District.

coordinator of the Fire Prevention Bureau of the rates paid for fire inspection work by eight to nine fire departments in suburban Chicago similar in size to the Fire Protection District. Defendant's Rule(M) Statement ¶ 10. Therefore, the fact that fire inspection services are performed only during overtime hours does not preclude a finding that the Fire Protection District's rate was not "bona fide" within the meaning of Section 7(g)(2).

### 3. Compensation Paid Pursuant to an Agreement or Understanding

In their response to the Fire Protection District's summary judgment motion, the Plaintiffs do not dispute that they arrived at an agreement or understanding with the Fire Protection District regarding the different pay rates for firefighting and fire inspection work before their performance of fire inspection work. In addition, it is undisputed that Firefighters have always understood that they would be paid a different rate for working as fire inspectors than as firefighters with the exception that they would be paid their firefighter rate while working as a fire inspector when they respond to a Plan 2 working fire or work at the scene of a Plan 1 fire for a length of time. Defendant's 12(M) Statement ¶¶ 12, 15, 16. It is also undisputed that Plaintiffs continued to work pursuant to this understanding and failed to complain to anyone in authority at the Fire Protection District regarding this issue until filing the present lawsuit. Defendant's 12(M) Statement ¶ 16. Finally, it is uncontroverted that the representatives of the Plaintiffs have negotiated changes to the fire inspector rate with the Fire Protection District. Defendant's 12(M) Statement ¶ 12. The Fire Protection District has established that a different rate was paid for fire inspection work than for firefighting

pursuant to an understanding before the performance of fire inspection work. *See Townsend,* 862 F.2d at 1011 (indicating "Townsend has conceded that the requisite agreement exists between Mercy and the operating room employees. Each employee was notified of and implicitly agreed to this arrangement as part of the terms and conditions of employment.").

### 4. The Applicable Rate during Paid During Overtime Hours

Finally, it is undisputed that Plaintiffs are paid for fire inspection duties performed during overtime hours at a rate of one and one half times the base rate established for fire inspection work. Defendant's 12(M) Statement ¶¶ 12–14. As previously explained, the fact that Plaintiffs work as fire inspectors only during overtime hours is irrelevant. *See Townsend,* 862 F.2d at 1013; *Penn Packing Co.,* 335 F.Supp. at 1022–23.

Thus, the Fire Protection District did not violate the FLSA by paying the Firefighters one and one half times a different hourly rate for fire inspection services performed during overtime hours rather than one and one half times the regular rate for firefighting services performed during non-overtime hours.[11] Given the Court's disposition of the FLSA overtime pay issue, it need not rule on the Fire Protection District's remaining arguments that Plaintiffs are not entitled to liquidated damages or to a three-year statute of limitations.

### B. Illinois Wage Payment and Collection Act Claim

Plaintiffs allege that the Fire Protection District violated the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS § 115/1 et seq., by denying them overtime wages. First Am. Cmplt. ¶ 13.

---

**11.** The one case cited by the Plaintiffs in support of their summary judgment motion is inapposite. *Hodgson v. A.W. Crossley,* 365 F.Supp. 1131 (S.D.N.Y.1973), considered whether an employee's hours worked for a primary employer and a supplemental employer should have been aggregated pursuant to the joint employer doctrine. No joint employer relationship is at issue here. Rather, the issue is whether the Fire Protection District pays Plaintiffs overtime at the correct rate when they work as fire inspectors.

The IWPCA mandates that employers pay their employees agreed upon wages and benefits within certain time periods. 820 ILCS §§ 115/2–5. The IWPCA also prohibits employers from making deductions from an employee's wage or final compensation except in limited circumstances outlined in the statute. 820 ILCS § 115/9. The IWPCA requires employers to notify employees at the time of hiring of the rate of pay and the time and place of payment as well as any changes to the arrangement prior to the time of the change. 820 ILCS § 115/10. Finally, the IWPCA contains an anti-retaliation provision. 820 ILCS § 115/14(c). The IWPCA does not, however, address the rate at which an employer must pay its employees, either during regular or overtime hours.

Plaintiffs have failed to indicate exactly what provision of IWPCA they believe the Fire Protection District violated or their reasons for believing a violation of the IWPCA occurred. The success of Plaintiffs' IWPCA claim appears tied to the success of their claim under the FLSA. Accordingly, Plaintiffs' Wage Payment and Collection Act claim is dismissed with prejudice. *See Bjornson v. Daido Metal U.S.A., Inc.*, 12 F.Supp.2d 837, 838 n. 2 (N.D.Ill.1998) (stating "Originally Bjornson also charged Daido with violating the Illinois Wage Payment and Collection Act . . . but Bjornson has presented no evidence or argument in support of that potential claim in opposition to Daido's Rule 56 motion. Because Bjornson bears the burden of proof on that claim, his failure to argue it is fatal . . . . Bjornson's effectively abandoned Collection Act claim is therefore dismissed with prejudice . . . .").

## IV. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant and against the Plaintiffs.

The Clerk is further directed to terminate this case and enter a Rule 58 judgment.