James D. HODGSON, Secretary of Labor, United States Department of Labor

v.

PENN PACKING CO., Inc., a Corporation.

Civ. A. No. 43458.

United States District Court, E. D. Pennsylvania.

Nov. 19, 1971.

John F. Holden, Louis Weiner, U. S. Department of Labor, Philadelphia, Pa., for plaintiff.

Kimber E. Vought, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for defendant.

## FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW, AND ORDER

HAROLD K. WOOD, District Judge.

This is an action instituted by the Secretary of Labor charging defendant Penn Packing Company, Inc. (Penn Packing) with violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 et seq. The Secretary seeks to restrain defendant from withholding payment of overtime compensation allegedly due to certain Penn Packing employees and to enjoin further violations of the Act.

The Secretary charges that defendant committed two separate violations of the Act. The first alleged violation was the employment of two employees for a workweek in excess of the statutory maximum without payment of overtime compensation. The second violation was the employment of eight employees, including the two previously mentioned, for weekend work without paying the amount of overtime compensation required by the Act. The parties have stipulated that defendant and its employees were engaged in interstate commerce and/or the production of goods for interstate commerce within the meaning of the Act. They have further stipulated as to the amount of back wages for which defendant company is liable in the event that we find that it violated the provisions of the Act. We make the following

### FINDINGS OF FACT

1. Allan Brown is an employee of defendant Penn Packing.

2. Brown's activities include some inside sales work, production work, the pricing of bills and the correlating of orders. (N.T. 14)

3. Brown spends approximately fifteen to twenty hours per week compiling and correlating orders. (N.T. 19) He spends four to five hours per day pricing bills, this work being done not continuously, but in conjunction with other activities. (N.T. 15)

4. Brown is employed for a workweek in excess of forty hours. (N.T. 17)

5. Brown receives a flat salary of $150.00 per week. (N.T. 22)

6. Howard L. Kessler is employed by Penn Packing as an inside salesman. (N.T. 31)

7. Kessler spends approximately 90% of his time taking orders over the telephone. (N.T. 31)

8. In setting prices for orders received over the telephone, Kessler generally consults and is guided by a standard pricing sheet used by meat companies. He may, on occasion, use his discretion in setting a price, but such instances are unusual. (N.T. 39–40)

9. Kessler is employed for a workweek in excess of forty hours. (N.T. 32)

10. Kessler receives a flat salary of $155.00 per week. (N.T. 35)

11. Anthony J. Roccia and Lawrence Rose are employed by Penn Packing as maintenance men. (N.T. 51, 55) Anthony Foglia, Gerald Friedman, Ryszard Wojiechowski and Bolec Staniec are employed by Penn Packing as butchers. (N. T. 44, 59, 65, 68)

12. At one time Penn Packing employed part-time employees on weekends to perform miscellaneous duties such as painting, repairing pallets, cutting grass and cleaning up. They were paid approximately $3.00 per hour. (N.T. 22, 45, 69, 91)

13. Each of the above-mentioned employees consulted Mr. Martin Lipoff, President of Penn Packing and requested that they be allowed to perform these extra weekend duties in addition to their regular employment.

14. The employees and Lipoff entered into oral agreements whereby the em-

ployees would perform the weekend work previously done by outside employees.

15. Howard Kessler was employed by Penn Packing on Friday evenings checking in truckdrivers. (N.T. 36) He was paid a flat rate of $2.50 per hour which made no provision for overtime compensation. (N.T. 36)

16. The remaining seven employees performed the duties described in Finding No. 12. This work was generally performed on Saturdays. Most of the employees were paid a base rate of $1.-8325 per hour and, with overtime compensation, a total of $2.75 per hour. The others were paid a base rate of $2.00 per hour and, with overtime compensation, a total of $3.00 per hour.

17. Penn Packing has kept payroll journals indicating the number of hours worked by its employees and the amount of compensation received. The journals show the number of overtime and non-overtime hours worked and the compensation for each. The records are sufficient to indicate the number of hours which the employees spent doing clean-up work.

## DISCUSSION

At trial, defendant raised the issue of the Court's jurisdiction. It alleged that in an action instituted by the Secretary under Section 17 of the Act, the novel question proviso of Section 16(c) is applicable. Section 16(c) provides that the Secretary may sue on behalf of any employee filing a request claiming unpaid minimum wages or overtime compensation. However, "(This) authority to sue shall not be used by the Secretary of Labor in any case involving an issue of law which has not been settled finally by the courts, and in any such case no court shall have jurisdiction over such action or proceeding initiated or brought by the Secretary of Labor if it does involve any issue of law not so finally settled." Under Section 17, the Secretary does not sue upon written request of an employee, but on his own initiative. It was defendant's position at trial that Sec-

tion 17 must be read in pari materia with the novel question provision of Section 16(c).

Subsequent to trial, the Third Circuit answered this question in Hodgson v. Wheaton Glass Company, 446 F.2d 527 (3rd Cir. 1971). There the Court held that the novel question proviso is not applicable to a proceeding instituted by the Secretary under Section 17. Accordingly the proviso is not an impediment to the present action, and we have jurisdiction to adjudicate the merits of the case.

Section 7(a)(1) of the Act as amended 29 U.S.C. § 207(a)(1) provides that:

"Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

It is clear, with respect to each violation charged, that Penn Packing did not pay its employees one and one-half their regular hourly rates for hours worked in excess of the statutory maximum. However, it alleges that in each case it was relieved from the obligation of doing so by applicable exemptions provided by the Act.

The Government's initial contention is that Penn Packing violated the Act by employing Allan Brown and Howard L. Kessler for a workweek in excess of forty hours without payment of overtime compensation. The evidence reveals that these employees were employed for workweeks in excess of forty hours and received respective salaries of $150.00 and $155.00 per week regardless of the number of hours worked. Penn Packing contends that Brown and Kessler are "employee[s] employed in a bona fide * *

administrative \* \* \* capacity" within the meaning of Section 13(a)(1) as amended 29 U.S.C. § 213(a)(1), and therefore need not be paid overtime compensation for hours in excess of the statutory maximum.

 There are two standards by which the Courts can determine whether an employee is employed in an administrative capacity: the "long test" and the "short test". Peperissa v. Coren-Indik, Inc., 298 F.Supp. 34 (E.D.Pa. 1969). In employing the "long test" the Court must determine whether each of the following requirements are met:

(1) The employee's primary duty consists of either "the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers;"

(2) He "customarily and regularly exercises discretion and independent judgment;"

(3) He "regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity;" or "performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge;" or "executes under only general supervision special assignments and tasks;"

(4) He "does not devote more than 20 percent \* \* \* of his hours worked in the workweek to activities which are not directly and closely related to the performance of the work described" in (1) to (3) above; and

(5) He "is compensated for his services on a salary or fee basis at a rate of not less than $100 [1] per week;" 29 C.F.R. § 541.2.

Under the "short test" the Court need determine only whether he "is compensated on a salary or fee basis at a rate of not less than $150.00 per week [2] and whether his primary duty consists of work described in paragraph (1) above which includes work requiring the exercise of discretion and independent judgment. 29 C.F.R. § 541.2.

 The burden of establishing an exemption under the Act is on the employer. Idaho Sheet Metal Works, Inc. v. Wirtz, 383 U.S. 190, 206, 86 S.Ct. 737, 15 L.Ed.2d 694 (1966), reh. den. 383 U.S. 963, 86 S.Ct. 1219, 16 L.Ed.2d 305 (1966). "These exemptions are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L. Ed.2d 393 (1960), reh. den. 362 U.S. 945, 80 S.Ct. 803, 4 L.Ed.2d 772 (1960). With these principles in mind, we proceed to a determination of the applicability of the Section 13(a) (1) exemption to Brown and Kessler.

 Allan Brown performs a number of functions for Penn Packing such as pricing invoices, correlating orders, taking orders by telephone and issuing credits to customers. We do not believe that these duties are sufficient to label him as administrative personnel under either the "long test" or "short test". It is clear that his work does not call for the regular exercise of independent judgment. Rather his work is largely clerical in nature. An employee engaged in general clerical or bookkeeping work is not executive or administrative personnel within the meaning of the Act. Helena Glendale Ferry Co. v. Walling, 132 F.2d 616 (8th Cir. 1942); Wirtz v. Williams, 369 F.2d 783 (5th Cir. 1966). Howard Kessler is an inside salesman.[3] He spends

---

1. This amount has, subsequent to the institution of this action, been raised to $125.00.

2. This amount has been raised to $200.-00.

3. Section 13(a) (1) of the Act as amended 29 U.S.C. § 213(a) (1) excludes outside salesmen from the overtime provisions of Section 7. No mention is made of inside salesmen. Although this might in-

most of his time taking orders by telephone. Once again there is no evidence that he is engaged in work which calls for the regular exercise of independent judgment. The record indicates only that Kessler does, on rare occasions, digress from the standard pricing sheet and charge customers a price different from the one on the sheet. However, we do not think this is sufficient. In the first instance it is only a small, narrow exercise of discretion. The Act requires more than an exercise of "those small discretions which normally inhere" in the type of work which one does. See Rothman v. Publicker Industries, Inc., 201 F.2d 618, 620 (3rd Cir. 1953). Moreover such discretion is exercised only in rare instances and falls well short of a customary and regular exercise of discretionary powers. Accordingly we conclude that Brown and Kessler do not qualify as administrative personnel and that Penn Packing violated the provisions of the Act by failing to pay them overtime compensation.

The second violation which the government charges is that Penn Packing failed to pay sufficient overtime compensation to those employees who performed miscellaneous cleanup chores on weekends and to Howard Kessler who worked on Friday evenings.

 Where an employee works at two or more different jobs which have different hourly rates, the Wage and Hour Administrator has determined that the rate upon which overtime must be paid is the weighted average of the rates at which he works. This is determined by computing the employee's entire compensation during the workweek from all such rates and dividing by the total number of hours worked at all jobs. 29 C.F.R. 778.115.

An exception to this method of computing overtime compensation is provided by § 7(g) (2) of the Act as amended

29 U.S.C. § 207(g) (2) which provides as follows:

"(g) No employer shall be deemed to have violated subsection (a) of this section by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection—

\* \* \* \* \* \*

"(2) In the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours;

\* \* \* \* \* \*

"and if (i) the employee's average hourly earnings for the workweek \* \* are not less than the minimum hourly rate required by applicable law, and (ii) extra overtime compensation is properly computed and paid on other forms of additional pay required to be included in computing the regular rate."

The question before us is whether the compensation paid to weekend employees satisfies the conditions of this exemption.

It is clear from the record that the employees who in addition to their regular jobs performed weekend cleanup activities were performing two completely unrelated, different kinds of work.

dicate a policy against exempting inside salesmen from coverage under Section 7, there appears to be no reason why an

inside salesman meeting all of the requirements for executive or administrative personnel could not be exempt.

Brown was engaged during the regular workweek in bookkeeping and clerical activities. Foglia, Friedman, Wojiechowski and Staniec were butchers. Roccia and Rose, while employed in the maintenance shop, had duties which consisted mostly of repairing equipment and machinery. Their weekend work which included cutting grass, picking up paper and performing other miscellaneous duties was sufficiently removed from their regular jobs to constitute a different kind of work. See Mitchell v. Independent Stave Company, 168 F.Supp. 830 (W.D.Mo.S.D.1958).

Furthermore, it is undisputed that the employees and Penn Packing entered into an agreement prior to commencement of the work which established the rate at which the employees would be paid. It is clear that the employees approached Martin Lipoff, President of Penn Packing and sought weekend employment. While not every employee at trial had an independent recollection of such a meeting with Lipoff, the testimony of a majority of them and the testimony of Lipoff establish that a valid agreement was entered into prior to the performance of the work.

The one requirement which the government contends that Penn Packing did not meet is the requirement that it pay, to employees performing two different kinds of work which have different established rates, overtime compensation one and one-half times "such bona fide rates applicable to the same work when performed during non-overtime hours." As applied to the facts of the instant case, this requirement presents a unique problem of interpretation. In prior cases which have involved the provisions of 29 U.S.C. § 207(g) (2), the following elements have been present: (1) there was an established rate for the work which was being performed; (2) the work which was performed during overtime hours was also performed during non-overtime hours; (3) the employees who performed the work during overtime hours also performed the same work during at least part of the regular workweek. In the instant case it is questionable whether there was any established rate for the cleanup work other than the rates established by the agreements between Penn Packing and the employees in question. Secondly, neither the employees who performed the work during overtime hours nor any other employee of Penn Packing performed the work during the regular workweek. It was performed exclusively during overtime hours.[4] Consequently we are presented with a case substantially different from those generally arising under these provisions.

The Secretary presents alternative arguments. The first may be stated as follows: To qualify for an exemption under the Act, an employer must satisfy all of the requirements provided by the exemption. In this case the cleanup work is never performed during non-overtime hours and thus there is no bona fide rate applicable to the work when performed during non-overtime hours. Consequently Penn Packing has failed to satisfy the requirement that the overtime rate be one and one-half times the bona fide rate applicable to the work when performed during non-overtime hours. Having failed to meet this requirement, Penn Packing cannot avail itself of the exemption and must base overtime compensation for the cleanup work on the weighted average of the rate established for the cleanup work and the rate applicable to the employee's regular work.

Clearly the government is correct in contending that there is no bona fide non-overtime rate applicable to the cleanup work. However we conclude that this fact does not automatically preclude the availability of the 29 U.S.C. § 207(g) (2) exemption. This

---

4. Because the outside employees who previously did the work were part-time employees, the hours were not, for them, overtime hours. However the work was never performed during the regular workweek, and thus never during what would be non-overtime hours for these regular employees.

requirement merely provides that an employer who pays a certain straight time rate for a particular job must, if the job is performed during overtime hours, pay not less than one and one-half times the straight time rate. Penn Packing has not failed to satisfy this requirement; the requirement simply cannot be reconciled with the facts of this case. In such a situation we believe that an employer satisfies the provisions of 29 U.S.C. § 207(g) (2) when he meets all requirements other than the one in question, agrees with his employees to pay an hourly rate in excess of the applicable minimum wage and scrupulously adheres to the requirement that he pay one and one-half times that rate during overtime hours. In so holding, we in no way depart from the settled doctrine that to qualify for an exemption under the Act, an employer must meet all of the requirements of the exemption. We merely hold that, because under the unusual circumstances of this case the employer is unable either to literally comply or fail to comply with the requirement in question, he may qualify for the exemption if he satisfies all other requirements of 29 U.S.C. § 207(g) (2) and does not violate the spirit of this particular requirement, i. e., that an employer cannot pay one rate during straight time hours and a lower rate for the same work during overtime hours.

 We come then to the government's second contention, that if the exemption is applicable, the rate upon which overtime should have been based was $3.00 per hour, the rate which Penn Packing had paid to the outside employees who previously did the cleanup

work. This question turns upon whether $3.00 was the established hourly rate for the cleanup work. We conclude that it was not. The collective bargaining agreement between Penn Packing and the employee's union does not establish any rate for cleanup work. The rate was never paid to any regular employee of Penn Packing, but only to part-time employees and only on weekends. The rate is an inflated one for the type of work which was done and reflects, we think, the fact that the rate was paid to part-time employees who were sure of only a limited number of hours' work and had to work during weekends and would likely not have felt it worth their while to work at a lower rate.[5] We do not believe that payment of $3.00 per hour under these circumstances made that rate the "established rate" for general cleanup work. Consequently we see no reason why the parties could not agree in good faith to a base rate less than the $3.00 per hour previously paid to the outside employees.[6]

 The government has also attempted to show that Penn Packing did not pay its employees overtime compensation for the cleanup activity, but that the $2.75 or $3.00 per hour was a flat rate. We disagree. The government's only evidence in this regard was the payroll records which in some instances broke down overtime compensation into a base rate of $1.8325 and a total rate of $2.75 per hour but in a majority of instances indicated only payment of $2.-75 per hour without breaking it down into a base rate plus overtime. This factor is not significant, however, if the employees understood that the $2.75 per

5. It is significant that the $3.00 hourly rate paid to the outside employees doing the cleanup work was more than the $2.80 per hour which was paid to Penn Packing's butchers.

6. We are unable to determine how, when there is a dispute as to what rate should have been paid, the parties have stipulated to damages. Damages should be determined by subtracting the amount which Penn Packing paid these employees from the amount which it would have paid if it

had based overtime on the weighted average of the hourly rates of their regular jobs and the rate for the cleanup work. It would seem that if there is a dispute as to the proper rate for the cleanup work if the exemption applies, there would be a dispute as to which rate should be used in determining the weighted average if the exemption does not apply. However the parties apparently agreed as to which rate should be used in the averaging process.

hour which they received included overtime compensation. "The important objective is assurance that the employees and the employer are aware that overtime compensation in a specific amount is included in the contract." Wirtz v. Harper Buffing Machine Company, 280 F.Supp. 376, 381 (D.Conn.1968); Nunn's Battery & Electric Co. v. Goldberg, 298 F.2d 516 (5th Cir. 1962). As the evidence demonstrates beyond question that the employees when they made their agreements with Penn Packing were aware that they were receiving a base rate plus overtime or a rate which included time and one-half overtime compensation, the method of compensation was valid.

■ Although we have concluded that Penn Packing satisfied the requirements of the 29 U.S.C. § 207(g) (2) exemption with respect to the seven employees who performed weekend cleanup work, we reach a contrary conclusion with respect to Howard Kessler.[7] Kessler, in addition to his regular employment as a salesman, was employed by the company on Friday evenings checking in truckdrivers. Kessler testified that he was compensated for this work at a *flat rate* of $2.50 per hour. He further testified that there was no understanding on his part that the $2.50 included overtime compensation. This method of compensation therefore violated the overtime requirements of the Act. Wirtz v. Harper Buffing Machine Company, *supra*.

■ The government also contends that Penn Packing violated the Act's record keeping requirements. This contention arises from defendant's alleged failure to comply with its duty to (1) record the exact date of the agreements between defendant and its employees regarding the cleanup work [8] and (2) to record the number of overtime hours worked at each hourly rate, i. e., to break down the employees' overtime hours into overtime hours worked at their regular jobs and overtime hours devoted to the cleanup activity. We find no violations.

At trial, the government introduced payroll records of Anthony Foglia for the week of September 22, 1966 and of Gerald Friedman for the week of August 8, 1965. In each instance there is a notation of the total number of overtime hours worked and the total amount of overtime compensation. Neither the hours nor the compensation is segregated according to the kind of work performed during those hours. However, we cannot conclude from this evidence that Penn Packing violated the Act's record keeping requirements. The government did not prove that these employees were performing weekend cleanup activity at the time represented by these payroll records. There is no indication that the employees performed two or more kinds of work during overtime hours for those weeks. Thus we are left to speculate whether those payroll records are insufficient under the Act or whether they accurately reflect the fact that only one kind of overtime work was performed.

Had the government proved, for example, that Foglia performed his regular job and weekend cleanup activity during 1966 and that his payroll records consistently failed to indicate the performance of two types of work, we could conclude that the records are insufficient. However the government has shown only that for *one week* there is no indication of two kinds of overtime work. This is insufficient evidence of a violation.

In addition, as previously stated, the parties stipulated as to the amount of back-wages, if any, which are due to Penn Packing employees. In order to compute this, the parties had to know

---

7. We do, however, conclude that Kessler, like the other employees, entered into an agreement prior to the commencement of the Friday evening work and was performing two different kinds of work.

8. We find nothing in the record to indicate that Penn Packing did not record the date of these agreements.

the number of hours of cleanup work performed by the employees. Consequently it would appear that Penn Packing's records did indicate the overtime hours of its employees which were devoted to cleanup work.

The final question presented is whether an injunction should issue against Penn Packing to bar future violations of the Act. This question is addressed to the sound discretion of the trial Court. Wirtz v. Atlas Roofing Mfg. Co., 377 F.2d 112 (5th Cir. 1967). In determining whether to issue such an injunction, relevant factors for the Court's consideration are:

> "the employer's previous actions of non-compliance or litigation, the moral and business responsibility of the employer, the extent of which promises of future compliance are something more than empty, idle words unmatched by the institution of effectual corrective procedures, or are undependable contrition under pressure of legal action, whether litigious contention is the legitimate good faith quest for legal determination or the mere pretense, for past or future actions, to thwart effective compliance." Mitchell v. Hodges Contracting Co., 238 F.2d 380, 381 (5th Cir. 1956); Goldberg v. Cockrell, 303 F.2d 811, 813 (5th Cir. 1962).

In this case the actions on the part of Penn Packing have been consistent with a good faith effort to comply with the provisions of the Act. We have found violations only with regard to two employees, Brown and Kessler, and in each case defendant could sincerely and reasonably have believed that its method of compensation did not violate the Act. Moreover, the government originally charged Penn Packing with failing to pay proper compensation to employees in addition to those which we

have discussed. Defendant stipulated to the amount of back wages owed to those employees and paid them that amount to comply with the provisions of the Act. Accordingly, we have no reason to believe that defendant will not comply in the future and we will not issue an injunction. Wirtz v. Old Dominion Corporation, 286 F.Supp. 378 (E.D. Va.1968); Wirtz v. Sullivan, 326 F.2d 946 (5th Cir. 1964).

## CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. Allan Brown and Howard Kessler are not "administrative personnel" within the meaning of Section 13(a) (1) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 213(a) (1).

3. Penn Packing violated Section 7 (a) (1) of the Act as amended 29 U.S.C. § 207(a) (1) by failing to pay Brown and Kessler overtime compensation for hours worked in excess of the statutory maximum.

4. Penn Packing violated Section 7 (a) (1) of the Act as amended 29 U.S.C. § 207(a) (1) by failing to pay adequate overtime compensation to Howard Kessler for his secondary employment on Friday evenings.

5. Penn Packing's compensation of employees Brown, Foglia, Friedman, Roccia, Rose, Staniec and Wojiechowski was valid under the exemption provided by Section 7(g) (2) of the Act as amended 29 U.S.C. § 207(g) (2).

6. Penn Packing did not violate the Act's record-keeping requirements.

7. No injunction should issue against Penn Packing.

The Government shall within 30 days submit an order in accordance with this opinion.