Michael MCLAUGHLIN

v.

Kevin MURPHY, et al.

No. Civ. CCB–04–767.

United States District Court, D. Maryland.

July 20, 2004.

Memorandum Denying Reconsideration Oct. 13, 2004.

Howard Benjamin Hoffman, Howard B Hoffman Esquire Attorney at Law, Rockville, MD, for Plaintiff.

Jeffrey Louis Forman, Kauffman and Forman PA, Towson, MD, for Defendant.

*MEMORANDUM*

BLAKE, District Judge.

Plaintiff Michael McLaughlin brings this action against Defendants Freedmont Mortgage Corporation and Kevin Murphy, the President of Freedmont (collectively "Freedmont"), asserting claims under the Fair Labor Standards Act ("FLSA") and Maryland state law. Pending before the court is Freedmont's motion to dismiss or, in the alternative, for summary judgment. For the reasons stated below, Freedmont's motion will be granted in part and denied in part.

I.

McLaughlin was employed by Freedmont as a mortgage broker from August 2001 to November 2003. He was paid on a strict commission basis, with no regular salary. McLaughlin was terminated on or about November 17, 2003, and he filed this five-count action in March 2004. Counts I and II allege violations of the FLSA, 29 U.S.C. § 201 *et seq.* He claims that at various times during the term of his employment, he worked in excess of forty hours per week and did not receive overtime pay. He also asserts that for approximately twenty weeks throughout the course of his employment, he did not receive any wage at all for his work, let alone the statutory minimum wage of $5.15 per hour. In Counts III through V, McLaughlin alleges violations of Maryland state law, asserting claims under a theory of quantum meruit and under the Maryland Wage Payment and Collection Law ("MWPCL"), Md.Code Ann. Lab. & Empl. § 3–501 *et seq.* He claims that he is entitled to some compensation for three loans that he prospected and was developing at the time of his termination.

II.

A.

Freedmont filed a motion to dismiss all five counts for failure to state a claim, or in the alternative, a motion for summary judgment. A motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6) should be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). On such a motion, the court must view the allegations in the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

If, however, matters outside the pleadings are presented and considered by the court, the motion will be treated as one for summary judgment under Rule 56. Fed.R.Civ.P. 12(b)(6). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The materiality requirement of the summary judgment standard means that only those factual disputes that might affect the outcome of the suit preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In order for there to be a "genuine" issue of material fact, the evidence must be such that a reasonable jury could return a verdict for the non-moving party. *Id.*

### B.

 McLaughlin brings his two FLSA claims under 29 U.S.C. §§ 206 and 207. Section 206 requires every employer to pay employees not less than $5.15 an hour. Section 207 requires employers to compensate employees at a rate not less than one and a half times the regular rate at which the person is employed for every hour worked in excess of forty hours per week. However, the FLSA exempts certain employees from the requirements of Sections 206 and 207. 29 U.S.C. § 213. Under Section 213, employees employed in a bona fide executive, administrative, or professional capacity are exempt, as are employees employed in the capacity of "outside salesman," as that term is defined by FLSA regulations. These FLSA exemptions must be narrowly construed. *Stricker v. Eastern Off Road Equip., Inc.,* 935 F.Supp. 650, 654 (D.Md.1996). Furthermore, because an employee's exempt status is an affirmative defense, the employer bears the burden of proving the exemption by clear and convincing evidence. *Id.* at 653–54.

 Freedmont argues that McLaughlin is exempt under 29 U.S.C. § 213 as an outside salesman. An outside salesman is defined as an employee: (1) who is employed for the purpose of and who is customarily engaged away from the employer's place of business in making sales or obtaining orders or contracts for services; and (2) whose hours of work of a nature other than that just described do not exceed 20 percent of the hours worked in the workweek by nonexempt employees of the employer. 29 C.F.R. § 541.500(a)-(b). Work performed incidental to and in conjunction with the employee's own sales or solicitations, however, is not considered nonexempt work that counts towards the 20 percent limit. 29 C.F.R. § 541.500(b). The regulations further elucidate the concept of "outside salesman" as follows:

> Section 541.5 requires that an outside salesman be customarily and regularly engaged "away from his employer's place or places of business". This requirement is based on the obvious connotation of the word "outside" in the term "outside salesman". It would obviously lie beyond the scope of the Administrator's authority that "outside salesman" should be construed to include inside salesmen. Inside sales and other inside work ... is nonexempt. Characteristically, the outside salesman is one who makes his sales at his customer's place of business. This is the reverse of sales made by mail or telephone.

29 C.F.R. § 541.502. Case law addressing this issue confirms that where and how salesmen do most of their work is the key factor in determining whether they are outside salesmen exempt from the FLSA. *See, e.g., Nielsen v. Devry Inc.,* 302 F.Supp.2d 747, 761 (W.D.Mich.2003); *Reich v. Chicago Title Ins. Co.,* 853 F.Supp. 1325, 1332–33 (D.Kan.1994).[1]

---

1. The cases cited by Freedmont to support its arguments that location is irrelevant to this issue are inapposite. It cites *Stricker,* 935 F.Supp. at 654, for the proposition that the employee's primary duties are determinative of his status, but that case deals with the administrative/executive exemptions to the FLSA, not with the outside salesman exemption. In addition, *Luther v. Z. Wilson, Inc.,* 528 F.Supp. 1166, 1171 (S.D.Ohio 1981) actually supports McLaughlin's argument because it emphasizes that working primarily outside

Because an employee's exempt status is an affirmative defense that Freedmont must prove, it cannot ordinarily be determined on a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Cf. Paukstis v. Kenwood Golf & Country Club*, 241 F.Supp.2d 551, 557–58 (D.Md. 2003) (cannot resolve question of exemption under Maryland Wage and Hour Law on 12(b)(6) motion because exemption is an affirmative defense). The court should instead consider this issue on summary judgment. *Id.* Freedmont may have anticipated this fact, for it attached to its motion the affidavit of Carl Delmont, its Chief Operating Officer, and other exhibits in an effort to demonstrate that McLaughlin qualifies as an outside salesman. McLaughlin responded in turn with two of his own affidavits, one of which addresses the FLSA issues only ("McLaughlin FLSA Aff.") and attempts to contradict Freedmont's affidavit.

At this point, no discovery has taken place. Generally, summary judgment must not be ordered when the non-moving party has not had the opportunity to discover information essential to his opposition. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir.2002). If the nonmoving party believes that more discovery is necessary for it to demonstrate a genuine issue of material fact, it must file a Rule 56(f) affidavit stating that it could not properly oppose a summary judgment motion without a chance for discovery. *Id.* A party may not simply "lament" the lack of discovery; it must set forth its specific discovery needs in the Rule 56(f) affidavit. *Curtis v. Pracht*, 202 F.Supp.2d 406, 412 (D.Md. 2002).

In this case, McLaughlin argues that he is an inside salesman, and thus is not exempt from the FLSA. However, his FLSA affidavit indicates that he does not recall with certainty the specific number of clients and potential clients he worked with in person as compared to those he worked with over the telephone or through the mail. Throughout his affidavit, he has scattered references to the fact that he has not had the opportunity for discovery. (*See* McLaughlin FLSA Aff. ¶¶ 5, 9, 10, 11, 14.) The affidavit also contains two paragraphs in which he specifically requests discovery to determine all of the loans he closed and the names of potential clients with whom he might have met in order to better determine how often he saw clients outside the office. (McLaughlin FLSA Aff. ¶¶ 16, 17.) This evidence could be sufficient to create a genuine issue of material fact because it is relevant to McLaughlin's status as an outside salesman, which is an issue that could determine the outcome of the FLSA claims. The fact that the affidavit also contains McLaughlin's recollections about his work at Freedmont in an attempt to defeat summary judgment on the merits does not mean that it cannot also be a Rule 56(f) affidavit. *See* 10B Charles Alan Wright,

---

the office or home office is necessary to be considered an outside salesman. Finally, Freedmont cites *Hodgson v. Penn Packing Co.*, 335 F.Supp. 1015 (E.D.Pa.1971), in which the court specifically held that the employee Kessler was an inside salesman because he spent most of his time taking orders by telephone. *Id.* at 1021–22. The court also stated in a footnote, however, that even though Kessler was not exempt as an outside salesman, the FLSA did not prevent him from being exempt under the executive or administrative exemptions, if he met the criteria for them. *Id.* at 1021 n. 3. It is unclear whether Freedmont is attempting to argue that McLaughlin may also be exempt under the executive or administrative exemptions, or whether it simply is misconstruing the *Hodgson* court's opinion. Even if it is the former, there is no evidence on the record as it currently stands that McLaughlin qualifies for either of these exemptions.

Arthur R. Miller, & Mary Kay Kane, Fed. Prac. & Proc. § 2740 (3d ed.2004) (party that has obtained some evidentiary facts should present them in a Rule 56(f) affidavit when seeking to have the motion held in abeyance so that more facts can be investigated).

 Even if this does not qualify as a Rule 56(f) affidavit, the Fourth Circuit has held that if the nonmoving party makes objections to summary judgment that satisfy the purpose of the affidavit and has not been lax in discovery, the court may order further discovery without the affidavit. *Harrods*, 302 F.3d at 244–45; *Chernova v. Elec. Sys. Servs., Inc.*, 247 F.Supp.2d 720, 722–23 (D.Md.2003). Here, McLaughlin has devoted an entire section of his opposition brief to arguing that he is entitled to discovery under Rule 56(f), and he has identified the specific areas of discovery needed to create a genuine issue of material fact regarding his status as an outside salesman. (*See* Pl.'s Opp., at 12–13.)[2] He could not have been lax in discovery because he has not yet had the opportunity to conduct discovery. *Chernova*, 247 F.Supp.2d at 723.

Accordingly, Freedmont's motion for summary judgment as to Counts I and II will be denied without prejudice to allow discovery to take place.[3]

### C.

McLaughlin also brings three Maryland state law claims: (1) Count III—quantum meruit for the work he performed on the three loans prior to his termination; (2) Count IV—violation of the MWPCL for failure to pay him for the work he performed on these loans prior to his termination; and (3) Count V—violation of the MWPCL for failure to pay him overtime and minimum wage. Section 1 will address Counts III and IV, and Section 2 will address Count V.

### 1.

 Quantum meruit is a common law cause of action that may be used to obtain back wages from an employer when an employment contract is wrongfully terminated by the employer. *See Battaglia v. Clinical Perfusionists, Inc.*, 338 Md. 352, 358–59, 658 A.2d 680, 683 (1995); *Mogavero v. Silverstein*, 142 Md.App. 259, 280, 790 A.2d 43, 55 (2002). In order to recover under quantum meruit, the plaintiff must show that the services were rendered under such circumstances as to indicate that the plaintiff expected to be paid for them, and that the recipient of the services expected or should have expected to pay for them. *Mogavero*, 142 Md.App. at 277, 790 A.2d at 53. The MWPCL requires an employer to pay an employee all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid if the employment had not been terminated. Md.Code Ann. Lab. & Empl. § 3–505.[4] This statute supplements quantum meruit actions because it provides the opportunity for greater relief for essentially the same conduct. *Battaglia*, 338 Md. at 359, 658

---

2. The areas of discovery cited in the brief include all those areas identified in the affidavit, as well as the following: (1) the amount of money spent by Freedmont in long distance calls and postage records, (2) the states in which Freedmont is licensed, and (3) the contact information for current and past employees.

3. By allowing discovery, I am not necessarily agreeing that all the discovery requested by McLaughlin in his brief and affidavit is appropriate. The parameters of discovery will be determined at a later stage in the litigation.

4. Commissions are included in the definition of "wages" under the MWPCL. § 3–501(2).

A.2d at 683. That is, it gives employees a right of action against an employer to recover unpaid wages, and if the court finds the employer's withholding of wages was not the result of a bona fide dispute, the court may award the employee an amount up to three times the wage, plus attorneys' fees and costs. § 3–507.1. The only other difference between quantum meruit actions and MWPCL actions is that the employee need not be terminated wrongfully for the MWPCL to apply. *Battaglia,* 338 Md. at 363, 658 A.2d at 685.

McLaughlin was on notice that Counts III and IV could be analyzed under the summary judgment standard because Freedmont attached additional materials, and McLaughlin responded in turn with his own affidavit about the Maryland state law claims ("McLaughlin Md. Aff."). However, before a Rule 12(b)(6) motion can be converted to a motion for summary judgment, the nonmoving party must have a reasonable opportunity for discovery. As stated *supra,* no discovery has taken place at this point. While McLaughlin requests discovery in his Maryland affidavit, he only asks to discover the compensation Freedmont has paid to other employees it has terminated in order to determine their practices in this regard. (Pl.'s Opp. at 13; McLaughlin Md. Aff. ¶ 5.) This information will not create a genuine issue of material fact as to his *legal right* to pay-

ment under quantum meruit or the MWPCL. Therefore, the court will consider the exhibits provided by the parties and treat Freedmont's motion with respect to Counts III and IV as a motion for summary judgment.[5] *See United States v. Smithfield Foods,* 969 F.Supp. 975, 978 (E.D.Va.1997) ("If the additional discovery will not likely generate evidence germane to the summary judgment motion, the district court may, in its discretion, proceed to rule on the motion without further ado") (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.,* 939 F.2d 1257, 1267 (5th Cir.1991)).

McLaughlin's employment contract specifically addresses the situation where an employee stops working before closing all of his loans. The agreement states:

> It is understood that getting the loan to settlement is a major part of the Employee's role and that if the loan is not settled before the employee resigns, is terminated, laid off, dismissed, or any other action resulting in the Employee not working for the Employer, then the Employer will incur administrative costs and obligations. Thus, the parties agree that the Employee shall not be entitled to receive compensation for loans not settled and funded prior to the termination of employment. In the event

---

5. McLaughlin has moved to strike the affidavit of Carl Delmont on two grounds: (1) that it does not comply with 28 U.S.C. § 1746; and (2) that it is conclusory and devoid of significant and precise facts. With respect to the first argument, 28 U.S.C. § 1746 is inapplicable because it deals with the requirements of *unsworn* affidavits. Delmont gave a sworn affidavit, which is attested to by a notary public in Baltimore County. To support his second argument, McLaughlin cites *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954, 962 (4th Cir.1996), which holds that affidavits must not be conclusory, but rather must contain admissible evidence and be

based on personal knowledge. Delmont's affidavit satisfies these requirements. As the Chief Operating Officer of Freedmont, Delmont had personal knowledge about McLaughlin's job requirements, the duties he performed for Freedmont, and the events leading to his termination. Moreover, the affidavit details specific facts about McLaughlin's employment, and aside from one sentence in which Delmont states McLaughlin is an "outside salesman," does not make any legal conclusions. Thus, the affidavit need not be stricken and McLaughlin's motion will be denied.

that the Employer voluntarily elects to provide any compensation to the Employee for any loans pending at the time of the Employee's termination, such voluntary payment shall not obligate the Employer to make any other voluntary payment on any other loan pending at the time of termination.

(Delmont Aff. Ex. 1 ¶ 3.) Moreover, the contract specifically conditions payment of commission on the settlement and funding of a loan. It describes McLaughlin's compensation as follows:

[F]orty-fifty (based on originating source) (40–50%) of all brokerage fees earned as listed on Mortgage Broker Fee Line on client's Good Faith Estimate earned by the Employee on any mortgage loan transactions originated by the Employer and/or Employee from Employer's own resources, which is submitted by the Employee to Employer in "complete application form;" *and for which the loan is subsequently funded, settled and not rescinded while the employee is still employed.*

(*Id.*) (emphasis added).

It is undisputed that for two of the loans that were not closed, McLaughlin had signed the customers up for loan programs for which they did not qualify and, as a result, the loans had to be completely redone. (Delmont Aff. ¶ 8.) After McLaughlin was fired, these loans were turned over to another loan salesman, who was paid the commissions once the loans closed. (*Id.*) The third loan has still not closed. (*Id.*) McLaughlin argues that even though he did not close these three loans prior to termination, he is entitled to compensation for the work he did perform in prospecting and developing the loans. He states in his affidavit that the most difficult aspect of selling mortgage loans is obtaining clients. (McLaughlin Md. Aff. ¶ 3.) He also asserts that placing someone into a new loan pro-

gram because the original one was inappropriate is common and does not require much effort or expenditure. (*Id.* ¶ 4.) Most importantly, McLaughlin argues that the employment contract violates public policy because it gives the employer full discretion whether to compensate employees for work they have already performed.

The language of the contract, however, demonstrates that McLaughlin should not have expected to be paid for the work he performed prior to closing a loan, and that Freedmont did not expect to compensate him for this work. It does not matter that it might be more difficult to obtain clients than to close loans, or that placing someone in a new loan program is relatively simple. The parties agreed when they signed the contract that McLaughlin would only be paid when he closed the loans, and he admits that he did not do so for the three loans in question. Nevertheless, McLaughlin relies on *Medex v. McCabe,* 372 Md. 28, 33, 811 A.2d 297, 300 (2002) to argue that his employment contract should not be enforceable. In *Medex,* the employment contract at issue conditioned the payment of incentive fees earned by the employee on the employee's still being employed on the date the incentive payments were made. The court found the contract to contravene the policy of the MWPCL— namely, that an employee's right to compensation vests when the employee does everything required to earn the wages. *Id.* at 41, 811 A.2d at 305.

■ In contrast to *Medex,* the employment contract between McLaughlin and Freedmont does not condition payment of commissions on an employee's continued employment. Rather, it conditions payment on the closing of the loan. It is not contrary to public policy for Freedmont to decide that commissions will only be paid for those loans that are fully settled. Closing a loan is set forth in the contract

as a key element of the broker's job, and the brokerage fees from settled loans are likely crucial to Freedmont's income. Unlike *Medex*, in this case compensation is not linked to an arbitrary factor such as employment on a particular date, but to a reasonable job requirement. The fact that it might take more effort to find clients than to close a loan does not make the employment contract illogical or contrary to the policy of the MWPCL. If McLaughlin's job were simply to find loan clients and start the process, then Freedmont would have to pay him for his efforts. *See Admiral Mortgage, Inc. v. Cooper*, 357 Md. 533, 540–51, 745 A.2d 1026, 1029–30 (2000) (employee whose sole job was to generate and develop loans was entitled to commissions for loans he completely developed that closed after his resignation). But the contract makes clear that his job was to prospect, develop, and settle loans completely, and that he would be paid when those duties were performed. Under the MWPCL, only when McLaughlin completed *all* those tasks would his right to any payment vest. Because McLaughlin did not do everything required of him under the contract with respect to the three loans at issue, he is not entitled by law to any compensation for them. Accordingly, Freedmont's motion for summary judgment as to Counts III and IV will be granted.[6]

## 2.

In Count V, McLaughlin raises a MWPCL claim for payment of minimum wage and overtime allegedly due. In their briefs and exhibits, however, neither party discusses the application of Maryland state law to the minimum wage and overtime issues. Instead, they focus only on payment for McLaughlin's work on the three loans that closed after his termination, as described *supra*. Indeed, the MWPCL does not contain provisions regulating minimum wage and overtime; such provisions are contained in the Maryland Wage and Hour Law ("MWHL"), Md.Code Ann. Lab. & Empl. § 3–401 *et seq.*, which basically tracks the FLSA.[7] However, McLaughlin never cites the MWHL in his complaint. Rather, he cites only to the MWPCL, apparently in an attempt to recover treble damages for the minimum wage and overtime he was allegedly never paid, since such damages are not available under the MWHL. *See* Md.Code Ann. Lab. & Empl. §§ 3–427, 3–507.1.

The MWPCL limits the availability of treble damages, however, to violations of

---

6. McLaughlin's claim for quantum meruit fails for the additional reason that it does not appear he was terminated wrongfully and in breach of his employment contract. He alleges in his complaint that Freedmont terminated him without cause. (Compl.¶ 17.) In its motion and supporting affidavit, however, Freedmont claims that McLaughlin was terminated because he lied about his dealings with a client. (Delmont Aff. ¶ 7.) Freedmont also submitted a letter purportedly written by McLaughlin to Freedmont executives admitting that he lied and stating, "I got myself fired." (Delmont Aff. Ex. 2.) McLaughlin's employment contract provided that Freedmont could terminate his employment without notice for cause, which was defined as including dishonesty. (Delmont Aff. Ex. 1

¶ 7.) In his opposition to Freedmont's motion, McLaughlin does not dispute Freedmont's assertions or the authenticity of the letter. Because McLaughlin was terminated for cause, the employment contract was not breached, and he cannot succeed on a claim for quantum meruit. Even if he were terminated wrongfully, however, his quantum meruit claim fails for the reasons identified *supra*.

7. Section 3–403(a)(4) states that the subtitle does not apply to outside salesmen; Section 3–413 requires employers to pay at least the minimum wage as set forth in the FLSA; and Section 3–415 requires employers to pay one and a half times the hourly wage for overtime work.

§ 3–502 or § 3–505. *See* § 3–507.1; *Glunt v. GES Exposition Servs.*, 123 F.Supp.2d 847, 873 (D.Md.2000). Section 3–502 deals with the timing of payment, and Section 3–505 deals with payment on cessation of employment.[8] In contrast, McLaughlin's minimum wage and overtime claims are based on his entitlement to the wages themselves. He does not allege that Freedmont failed to pay him regularly, but that it failed to pay him enough; and he does not allege that Freedmont failed to pay him minimum wage and overtime due him upon his termination, but that it failed to pay him these wages at all.[9] Accordingly, Count V should be dismissed under Rule 12(b)(6) for failure to state a claim on which relief can be granted.[10]

A separate Order follows.

### ORDER

For the reasons stated in the accompanying Memorandum, it is hereby **ORDERED** that:

1. Defendants' motion for summary judgment (docket no. 3) is **Denied without prejudice** pending discovery as to Counts One and Two;

2. Defendants' motion for summary judgment (docket no. 3) is **Granted** as to Counts Three and Four;

3. Defendants' motion to dismiss (docket no. 3) is **Granted** as to Count Five; and

4. Plaintiff's motion to strike the affidavit of Carl Delmont (docket no. 9) is **Denied.**

### MEMORANDUM ON RECONSIDERATION

Plaintiff Michael McLaughlin seeks to have this court reconsider and vacate its grant of summary judgment as to Count Five of his complaint against defendants Freedmont Mortgage Corporation and Kevin Murphy, the President of Freedmont (collectively "Freedmont"). In the alternative, McLaughlin seeks to have this court vacate its dismissal as to Count V and certify the relevant issue to the Maryland Court of Appeals pursuant to Md. Ann. Cts. & Jud. Proc. § 12–603. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons stated below, the motion will be denied.

McLaughlin was an employee of Freedmont and brought this action for money damages asserting claims under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and Maryland state law. Count V of the complaint involves a claim for payment of minimum wage and overtime pay allegedly due under the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann. Lab. & Empl. § 3–501 et seq. This court held that MWPCL § 3–507.1 limited its scope to violations of § 3–502 or § 3–505 and, accordingly, plaintiff could not avail him-

---

8. Section 3–502 requires employers to set regular pay periods and to pay employees at least one every two weeks or twice a month. Section 3–505 is cited *supra.*

9. In other words, McLaughlin could bring a claim for failure to pay minimum wage and overtime even if he was not terminated because his right to these wages and his termination are not linked.

10. Although the parties have attached exhibits and McLaughlin was on notice that this issue could be resolved on summary judgment, neither the briefs nor the additional materials address this question at all. Furthermore, McLaughlin's requests for discovery would not create any issues of fact regarding this question. Because Count V can be resolved based only on the pleadings, it is dismissed under Rule 12(b)(6) and not Rule 56.

self of the treble damages award offered in § 3–507.1.

## I.

McLaughlin filed a motion to reconsider pursuant to FRCP Rule 59(e). There are three situations in which a district court may amend an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law of prevent manifest injustice." *United States ex rel Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir.2002) (quoting *Pac.Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403(4th Cir.1998)). As there has been no change in controlling law nor new evidence offered in this case, there must be a clear error of law or manifest injustice for the court of grant a Rule 59(e) motion. Courts are reluctant, to grant such a motion, because "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403 (quoting 11 Charles Alan Wright, et al., Federal Practice and Procedure § 2801.1 (1995)).

## II.

McLaughlin's argument that the MWPCL can be applied to minimum wage and overtime payments due under the FLSA when there is no bona fide dispute between the parties as to the employee's right to such wages is defeated by the plain language of the statute, which clearly restricts the applicability of its treble damages provision to violations of the MWPCL itself. The statute reads:

§ 3–507.1. Recovery of unpaid wages

(a) Notwithstanding any remedy available under § 3–507 of this subtitle, if an employer fails to pay an employee *in accordance with § 5–502 or § 505* of this subtitle, after 2 weeks have elapsed from the date on which the employer is required to have paid the wages, the employee may bring an action against the employer to recover the unpaid wages.

(b) If in *an action under subsection (a) of this section*, a court finds that an employer withheld the wage of an employee *in violation of this subtitle* and not as a result of a bona fide dispute, the court may award the employee am amount not exceeding 3 times the wage, and reasonable counsel fees and other costs. (emphasis added).

The statute specifically says that this remedy is available for a violation of § 3–502 and § 3–505. Section 3–502 requires employers to set regular pay periods and to pay employees at least once every two weeks or twice a month. Section 3–505 requires an employer to pay all wages due for work that the employee did before the termination of employment, on or before the day on which employee would normally have been paid had the employment not been terminated. McLaughlin does not contend that his claims for overtime or minimum wage payments fall under the scope of § 3–502 or § 3–505 but rather that the remedy available under § 3–507.1 should be applied to FLSA claims.

Maryland courts look first to the words of the statute and "when they are clear and unambiguous, there is no need to search further." *Medex v. McCabe*, 372 Md. 28, 811 A.2d 297, 303 (2002). The court looks to the plain language first "on the tacit theory that the legislature is presumed to have meant what it said and said what it meant." *Witte v. Azarian*, 369 Md. 518, 801 A.2d 160, 165 (2002). As the legislature specifically mentioned the types of violations that are afforded treble damages, and the kind that McLaughlin asserts were not included, he cannot state a

claim for treble damages relief under this section of the MWPCL.

McLaughlin contends that his position is not an extension of the statute bet an interpretation. Maryland court, however, have refused to "modify an unambiguous statute by adding or removing words to give it a meaning not reflected by the words the legislature chose to use, 'nor engage in forced or subtle interpretation in an attempt to extend or limit the statute's meaning." *Medex*, 811 A.2d at 303 (quoting *Taylor v. NationsBank*, 365 Md. 166, 776 A.2d 645, 654 (2001)).

Further, the Maryland legislature chose to limit the scope of Section 3–507.1 despite its awareness of the existence of the FLSA. The FLSA is mentioned in sections of the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann. Lab. & Empl. § 3401 et seq., and it is referenced in definitions of the MWHL. *See* § 3–401(d). Yet, it is excluded for § 3–507.1. When the legislature uses a term in one place, and excludes it in another, it is meant to be excluded where it is omitted. See e.g., *Drew v. First Guar. Mortg. Corp.*, 379 Md. 318, 842 A.2d 1, 7–8 (2003) (citing several cases that support the maxim "*expressio unius est exclusio alterius*").

## III.

This court is not the first to hold that the availability of treble damages is limited to violations of § 3–502 of § 3–505. The plaintiff in *Glunt v. GES Exposition Servs.*, 123 F.Supp.2d 847 (D.Md.2000), asserted that treble damages could be awarded for violations of the Equal Pay Act, the Maryland Equal Work for Equal Pay Act, and the Family and Medical Leave Act. The *Glunt* court, citing *Baltimore Harbor Charters, Ltd. v. Ayd*, 759 A.2d 1091, 1101 (Md.App.2000), rejected plaintiff's claim. 123 F.Supp.2d at 873. McLaughlin contends that his case is dis-tinguishable, because the *Glunt* plaintiff could not allege an absence of a bona fide dispute. Once again, though, the discussion of a "bona fide dispute" appears in § 3–507.1(b) and is expressly limited to "an action under subsection (a) of this section." MWPCL 3–507.1(b). As the violations of the FLSA that McLaughlin alleges are not mentioned in subsection (a) of 3–507.1, the absence of a bona fide dispute does not assist him in asserting his claim for treble damages.

McLaughlin argues that the *Glunt* court decided this question wrongly and cites cases where he alleges that other federal and state courts have held that the state wage collection laws can be applied to amounts owed under the FLSA. In fact, the cases he cites do not support this proposition. Two of the cases cited relate to an Oregon state wage collection law this is applied to minimum wage, back payments and overtime payments owed under the Oregon Statute itself. *See Hargrove v. Sykes Enterprises, Inc.*, 2000 WL 1132049, *8 (D.Or.2000); *Davis v. Maxima Integrated Products*, 57 F.Supp.2d 1056, 1058–59 (D.Or.1999). They say nothing about applying remedies under the state wage collection laws to violations of the FLSA. Nor does *Smith v. Batchelor*, 934 P.2d 643 (Utah 1997), the Utah case that McLaughlin cites.

McLaughlin's argument that the treble damages award of the MWPCL can be applied to minimum wage and overtime payments due under FLSA is unfounded. He has failed to demonstrate that there was any clear error of law of manifest injustice in dismissing Count V of his complaint.